## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

KAREN ADAMS, individually and on
behalf of all others similarly situated,

Plaintiff,

v.                                              CIVIL ACTION NO.   3:15-3592

ARNE DUNCAN, in his capacity as Secretary
of the United States Department of Education,

Defendant.

### MEMORANDUM OPINION AND ORDER

Pending is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for

lack of subject matter jurisdiction brought by Defendant Arne Duncan, Secretary of the United

States Department of Education. ("Secretary"). ECF No. 8. The Secretary claims the Court lacks

subject matter jurisdiction over this action because the United States has not waived sovereign

immunity as to the injunctive relief Plaintiff Karen Adams seeks, and because Ms. Adams's claim

is mooted. Ms. Adams's action arises from the United States Department of Education's

("Department") decision to rehabilitate and sell loans Ms. Adams and thousands of others obtained

to attend a for-profit school under the Guaranteed Student Loan Program, now known as the

Federal Family Education Loan ("FFEL") Program. Prior to rehabilitating and selling Ms.

Adams's FFEL loan, the Secretary had found it and other FFEL loans suitable for discharge due

to the school having falsely certified its students' eligibility for FFEL loans. Ms. Adams's asks the

Court to overturn the Secretary's decision to rehabilitate and sell group discharged FFEL loans,

and the decision, in Ms. Adams's case specifically, to refund no interest on money she paid under

her discharged FFEL loan. Finding subject matter jurisdiction over Ms. Adams's claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and no mootness, the Court **DENIES** the Secretary's motion.

## I.     Background

The facts relevant to deciding this motion to dismiss are detailed below in a light most favorable to Ms. Adams. First, some background on the FFEL Program is in order.

### A.  **Federal Family Education Loan Program**.

The federal student loan program formerly known as the Guaranteed Student Loan Program, now known as the FFEL Program, [1] was authorized by Congress under Part B of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070, *et seq.* ("HEA"). The HEA was enacted in an effort to address the growing need for financial assistance for students in higher education. *Tipton v. Sec'y of Educ. of U.S.*, 768 F. Supp. 540, 545 (S.D.W. Va. 1991). Under the FFEL Program, qualifying students who attended eligible postsecondary education institutions could obtain loans from participating lenders to finance their education. 20 U.S.C. §§ 1078(b)-(c). Repayment of the loans is insured by state or non-profit guaranty agencies, which in turn are reinsured by the Department of Education. The Department has promulgated regulations for the FFEL program under its HEA rulemaking authority.

Under the Department's regulations, if a borrower fails to repay the loan as scheduled, the lender must attempt to collect the loan using certain procedures. 34 C.F.R. § 682.411. If the lender's collection efforts are unsuccessful, the loan is considered in default and the lender presents

---

[1]  No new loans have been made under the FFEL Program since July 1, 2010. However, the benefits and obligations relating to prior loans remain in place. For consistency's sake, this Memorandum Opinion and Order will refer to statutes, regulations, and cases discussing the Guaranteed Student Loan Program as discussing the FFEL Program.

to the guaranty agency a claim for repayment of the loan. The guaranty agency then pays the lender for the loan and receives reimbursement from the Department. 34 C.F.R. § 682.406. However, the guaranty agency is also required to undertake collection efforts. 34 C.F.R. § 682.410(b)(6). If the guaranty agency's collection efforts are unsuccessful, the guaranty agency eventually assigns the loan to the Department, and the Department undertakes its own collection efforts. 34 C.F.R. § 682.409. The required collection activities by the lender and the guaranty agency are called "due diligence," and the lender and guaranty agency must meet the due diligence requirements in order to receive reimbursement from the Department. 34 C.F.R. § 682.406.

A borrower who has defaulted on a FFEL loan may "rehabilitate" the defaulted loan by making a certain number of qualifying on-time payments within a specific period. 20 U.S.C. § 1078-6(a); 34 C.F.R. § 682.405. If a FFEL loan is rehabilitated, the borrower recommits to paying the loan under the promissory note and receives significant benefits for no longer being in default, including having the default removed from the borrower's credit history.

The HEA and Higher Education Act Amendments of 1992 ("1992 HEA Amendments") also permit discharge of FFEL loans under certain conditions. The 1992 HEA Amendments provide that if a student borrower's "eligibility to borrow . . . was falsely certified by the eligible institution . . . then the Secretary shall discharge the borrower's liability on the loan (including interest and collection fees) by repaying the amount owed on the loan." 20 U.S.C. § 1087(c)(1); *Gill v. Paige*, 226 F. Supp. 2d 366, 369 (E.D.N.Y. 2002). Under Department regulations, an institution falsely certifies a student's eligibility if the institution: (1) certified the student's ability to benefit ("ATB") from the institution's training when the student did not meet the applicable statutory and regulatory requirements; (2) signed the borrower's name without authorization on

the loan application or promissory note; or (3) certified the student's eligibility for the loan as a result of the crime of identity theft. 34 C.F.R. § 682.402(e)(1)(i).

To qualify for a discharge, Department regulations generally require a borrower to file an application and provide certain information and records to demonstrate that he or she meets the requirements for a discharge. 34 C.F.R. § 682.402(e)(3); *see also Salazar v. Duncan*, No. 14–1230, 2015 WL 252078, at *4 (S.D.N.Y. Jan. 16, 2015).[2]  However, a borrower's loan may be discharged without an application if the Secretary determines that the borrower qualifies for a discharge based on information in the Secretary's possession. 34 C.F.R. § 682.402(e)(15). This latter option is known as a "group" or "blanket" discharge. Reviewing the Department regulations, the effect of a group discharge under (e)(15) is the same as when an individual borrower obtains discharge by filing an application under other sections of 682.402(e).[3]

---

[2] The regulations require the borrower seeking false-certification discharge to submit a written request and sworn statement stating that he or she received funds during the relevant time (i.e., on or after January 1, 1986), was admitted to the school on the basis of an ability to benefit from the school's training, and did not meet the requirements for admission on the basis of ability to benefit. 34 C.F.R. §§ 682.402(e)(3)(ii).

[3] Although one court has held that a borrower, after a group discharge, must still request a discharge from the loan holder and sign a sworn statement in order to have his or her loan discharged, *See Salazar*, 2015 WL 252078, at 7 (citing DCL GEN–95–42), this interpretation does not comport with the Department's regulation. Section 682.402(e)(3) explains how borrowers may obtain discharge and states "[e]xcept as provided in paragraph (e)(15) of this section [(providing for group discharge)], to qualify for a discharge of a loan under paragraph (e) of this section, the borrower must submit to the holder of the loan a written request and sworn statement." 34 C.F.R. § 682.402(e)(3). Thus, the language of the Department's regulation plainly states that borrowers whose loans the Secretary has group discharged need not submit to the holder of the loan a written request and sworn statement in order to have their loans discharged. 34 C.F.R. § 682.402(e)(3). The district court in *Salazar* relied upon the Department's Dear Colleague Letter, which as a non-binding interpretive rule, *see Gill*, 226 F. Supp. 2d at 375 (finding Dear Colleague policy requiring certain documentation for discharge is an interpretive rule that clarifies the existing regulations), cannot contradict the Department's binding rules set forth in regulation. *See Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995); *Warder v. Shalala*, 149 F.3d 73, 81 (1st Cir. 1998). The Secretary's non-binding interpretive rule, DCL GEN–95–42, requiring borrowers with group discharged loans to also apply to the loan holder for a discharge is inconsistent with the Department's own regulation, especially when the Department holds the group discharged loan,

After discharging a FFEL loan held by the Department, the Secretary is obligated by Department regulations to take several actions. First, the Secretary must reimburse the borrower amounts he or she paid voluntarily or through enforced collection on the discharged loan. *See* 34 C.F.R. §§ 682.402(e)(1), (2)(ii). The Secretary must also report the discharge to all credit reporting agencies. *Id.* at § 682.402(e)(iv). Additionally, a parallel regulation in the context of Direct Loans requires the Secretary, upon determining a borrower is eligible for discharge, to notify the borrower by mail about his or her eligibility for discharge and suspend collection efforts.[4]

## B. Ms. Adams's FFEL Loan

According to the Complaint, in 1986 Ms. Adams obtained a FFEL loan for $2,500.00 from the now-shuttered Florida Federal Savings and Loan ("FFSL"). Compl. ¶¶ 4, 20. Ms. Adams used the loan to attend the for-profit PTC Institute in Florida. Compl. ¶ 4. At the time she applied for the FFEL loan, Ms. Adams did not have a high school diploma or a General Educational Development credential ("GED"), Compl. ¶ 2, which made her ineligible for a FFEL loan unless the institution demonstrated, in one of several manners prescribed by regulation, her ability to benefit ("ATB") from the education or training offered by the institution. 20 U.S.C. §1091(d); 34 C.F.R. §§ 668.32(e), 668.141–156.

In 1992, Ms. Adams moved to West Virginia and was later awarded Social Security Supplemental Income ("SSI") benefits for mild mental retardation, minimal literacy, and dependent personality syndrome. Compl. ¶ 2. Her SSI benefits were around $700 a month at that time.

---

and therefore must be disregarded, at least for purposes of this motion.
[4] Though not directly applicable to the GSL program, other courts have looked to Direct Loan program regulations when deciding cases about loans under the GSL or FFEL programs. *See, e.g.*, *Salazar*, 2015 WL 252078, at 6.

Eventually, Ms. Adams defaulted on her FFEL loan. Pursuant to the provisions of the FFEL Program, the loan was assigned to the Department, which became the holder of Ms. Adams's loan.

In 1995, the Secretary conducted an investigation and found sufficient evidence to provide a group discharge to borrowers who used their FFEL loans to attend PTC Institute from January 1, 1986 through June 30, 1990. Compl. Ex. C; Compl. Ex. E. The Secretary's determination was based on a finding by the Department's Inspector General that PTC Institute had falsely certified the eligibility of its students for FFEL loans during this time period. Compl. Ex. C.[5] According to

---

[5] In the late 1980s and early 1990s, the Department's Inspector General went across the nation auditing and investigating proprietary schools like PTC Institute. S. Rep. No. 102-58, at 11(1991) [hereinafter Nunn Report]. The results of these investigations were incorporated into a 1991 report prepared by the Senate Permanent Subcommittee on Investigations chaired by then-Senator Sam Nunn. *See generally id.* In the Nunn report, the Subcommittee found "fraud and widespread abuses" committed at every level of the Program, and as a result:

> the [P]rogram's intended [beneficiaries]–hundreds of thousands of young people, many of whom come from backgrounds with already limited opportunities–have suffered further because of their involvement with the [Program]. Victimized by unscrupulous profiteers and their fraudulent schools, students have received neither the training nor the skills they hoped to acquire and, instead, have been left burdened with debts they cannot repay.

*Id.* at 33. Lastly, the Subcommittee found "the Department of Education had all but abdicated its responsibility to the students it [was] supposed to service . . . ." *Id.* at 33. Based on its findings, the Subcommittee recommended several actions by the Department and others to return the program's "focus to serving the interests of the students." *Id.* at 34. Specifically, the Subcommittee stated "[w]hen abuse and/or fraud are found, the Department . . . must act swiftly and decisively" because "inaction, delays and unnecessary procedural hurdles have halted effective action in the past. The Department should review and streamline current hearing and procedural requirements, eliminating unnecessary delays." *Id.* at 36. The Subcommittee also recommended the Department:

> develop ways to assist those students who continue to be victimized by fraud and abuse within the [Program]. Because the Department's oversight systems have failed, students who have not received the education promised have been left responsible for loans that they cannot repay and, therefore, on which they all too often default. The Department must . . . work with students to ease financial burdens imposed as a result of past abuse.

the Secretary's 1995 letter, an individual borrower who fell into this category could have his or her loan discharged by certifying that the school improperly determined his or her ability to benefit. Compl. Ex. C.[6]

In March 2006, Ms. Adams, not knowing about the 1995 group discharge, applied to have her FFEL loan discharged. Compl. Ex. E. In her application, however, Ms. Adams identified incorrectly the school she attended as the Chi Institute, rather than PTC Institute. *Id.* Ms. Adams's application was denied on the ground that attendees of the Chi Institute were not eligible for a group discharge. *Id.* The Secretary's records indicate the letter rejecting Ms. Adams's application was dated April 14, 2006.

After the Department denied Ms. Adams's discharge request, it recognized her loan as rehabilitated and sold it along with FFEL loans originated by PTC Institute. More specifically, in

---

*Id.* at 37 After the Nunn report, Congress enacted the 1992 HEA Amendments, which require the Secretary to discharge FFEL loans belonging to students whose eligibility to borrow was falsely certified by their school. *See Salazar*, 2015 WL 252078, at *4. Under the 1992 HEA Amendments, the Department promulgated the group discharge regulation set forth at 34 C.F.R. § 682.402(e)(15).

[6] The Secretary's 1995 letter appears inconsistent with the Department's regulation setting forth the group discharge procedure discussed above. The group discharge regulation provides a borrower's loan may be discharged without an application if the Secretary determines that the borrower qualifies for a discharge based on information in the Secretary's possession. 34 C.F.R. § 682.402(e)(15). The 1995 letter says the Secretary had enough information to determine that borrowers who used their FFEL loans to attend PTC Institute from present, January 1, 1986 to June 30, 1990 qualify for a discharge. However, the 1995 letter, apparently in violation of regulation, requires borrowers in this category to submit additional material, namely an ability to benefit certification, in order to have their loan discharged. Because the Court must construe facts in a light most favorable to Ms. Adams, and because the Secretary's letter cannot impose discharge requirements inconsistent with those of the Department's regulation, the Court finds for purposes of this motion to dismiss that Ms. Adams's FFEL loan was group discharged in 1995. Additional proceedings may reveal that Ms. Adams's loan was not in fact group discharged in 1995. But based on the Department's regulations and record before this Court at present, the Secretary's 1995 letter indicates Ms. Adams's loan falls within the category of FFEL loans group discharged by the Secretary in 1995. As such, her loan was discharged in 1995 without her needing to file an application.

2007 a collection contractor working for the Department contacted Ms. Adams and suggested she rehabilitate her loan. Compl. ¶ 14–15. Not realizing her loan was subject to the 1995 group discharge, Ms. Adams rehabilitated her loan on October 8, 2007. *Id.* In 2008, the Department sold Ms. Adams's loan along with others subject to the 1995 group discharge to SunTrust. SunTrust in turn hired American Education Services (AES) to collect on Ms. Adams's loan. Pursuant to AES's efforts, Ms. Adams started paying $78.00 a month on her rehabilitated but group discharged loan.

On October 8, 2012, Ms. Adams received notice from the guaranty agency for her loan, the Educational Credit Management Corporation ("ECMC"), that her rehabilitated loan was in default. Compl. ¶¶ 24, 26; Exhibit E. But she was later informed, through counsel, by ECMC that her loan was eligible for discharge based on the Secretary's 1995 group discharge. Ms. Adams applied for the discharge; the discharge was recognized by the Department; and Ms. Adams received a refund for all payments she made on the loan beginning in 2007, totaling $2,572.96. Compl. ¶ 29. Ms. Adams was not refunded interest on the money she had paid since 2007.

**C.  Ms. Adams's Demand for Relief**

In her Complaint, Ms. Adams seeks review under the APA, 5 U.S.C. § 701, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, of at least two Department decisions that harmed her. Compl. ¶ 6. First, she contends the Department's decision to sell group discharged FFEL loans to institutions intending to collect on those loans was in violation of law, namely the agency's rules and prior group discharge finding. Compl. ¶ 12. More specifically, the Department violated its own rules surrounding proper sale of rehabilitated FFEL loans when it sold Ms. Adams's group discharged loan to SunTrust for collection purposes while the Department either (1) knew the loan was not rehabilitated and unenforceable under the Department's regulations, or (2) did not first determine whether the loan was actually enforceable. Compl. ¶¶ 35–39, 41. As a

result, Ms. Adams unnecessarily made payments on her previously discharged loan, for which the Department reimbursed her without paying interest to her. Compl. ¶¶ 12, 30, 31. On this first APA claim, Ms. Adams asks to overturn the Secretary's decision to rehabilitate and sell her FFEL loan and those of others' similarly situated. She also asks for equitable relief, including enjoining the Department from attempting to collect on or sell group discharged FFEL loans, and requiring the Department to direct guaranty agencies and others to cease and desist from collection efforts for group discharged loans. Compl. ¶ 48, 49, 52, 53, 63, 65, 70.

Second, in her response to the Secretary's motion to dismiss, Ms. Adams clarifies that she also asks to overturn the Secretary's decision to refund the money she paid under her discharged loan since 2007 without paying interest on that money. Compl. ¶¶ 64; Pl.'s Resp. 10, ECF No. 13. Ms. Adams claims the Secretary's decision to not refund her money with interest was arbitrary, capricious, or not in accordance with law. Compl. ¶¶ 64; Resp. at 10. In her APA claim for interest, Ms. Adams seeks relief not already accorded to her by the discharge and refund, including, interest on the money she was refunded.

Ms. Adams also seeks to represent two classes of people who have had their group discharged loans sold for collection purposes. Compl. ¶ 47. Within these classes are people like Ms. Adams, who have had their group discharged loans sold, made payments on the loans, and were refunded their money without interest. The classes would also include people unlike Ms. Adams, who have had their group discharged loans sold and who are currently making payments on their loan, having no notice of the group discharge. According to Ms. Adams, people in this second group are entitled not only to interest, but also refund of money they paid on their discharged loan and other money.[7] Compl. ¶ 70.

_____

[7] Ms. Adams has not yet filed a motion for class certification, and so the Court does not delve into

-9-

Having recited the regulatory background and factual developments, the Court will next explain the legal standard for resolving the Secretary's motion to dismiss for lack of subject matter jurisdiction and then discuss the Secretary's motion.

## II.      Legal Standard

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. As Plaintiff, Ms. Adams bears the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Id*. (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

## III.      Discussion

The Secretary argues dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is proper for two reasons.[8]  First, he contends the United States has not waived sovereign immunity as to this suit because the injunctive relief Ms. Adams seeks against the Secretary is expressly prohibited by statute, the HEA in particular. Second, the Secretary maintains Ms. Adams's claim for injunctive relief is mooted on the ground that she has allegedly received all the relief to which

---

her two putative classes. *See* Compl. ¶¶ 48, 49.

[8]  At the end of his memorandum in support of dismissal, the Secretary argues in one sentence that Ms. Adams has lost standing to bring a class action on behalf of people who continue to pay under their rehabilitated group discharged FFEL loans because her loan has been discharged and she has been refunded money she paid under the discharged loan since 2007. Def.'s Memo in Supp. of Mot. to Dismiss 13–14, ECF No. 9. The Secretary's standing concern is of central importance to the Court because whether or not a class is certified, the threshold standing issue also determines whether this Court has subject matter jurisdiction to hear Ms. Adams's APA claim seeking to overturn the Secretary's FFEL rehabilitation and sale decision. However, the standing issue, not being fully briefed, is preserved for another occasion.

she is entitled, a refund of money she paid on her loan since her loan was rehabilitated in 2007. The Court considers the Secretary's arguments in turn.

### A. *Sovereign Immunity*

The Secretary contends this Court lacks subject matter jurisdiction to grant Ms. Adams's requested injunctive relief because the HEA does not waive sovereign immunity with respect to injunctive relief. In support of his position, the Secretary points to the HEA section waiving sovereign immunity and granting jurisdiction to federal district courts, which says the Secretary may sue and be sued in any district court of the United States, "but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary." 20 U.S.C. § 1082(a)(2). Ms. Adams responds that she brings this action pursuant to the APA, 5 U.S.C. § 701, *et seq.*, not the HEA.

The APA waives sovereign immunity of the United States in suits against administrative agencies brought by individuals who have been adversely affected or aggrieved by agency action. 5 U.S.C. § 702 (2014); *Hire Order Ltd. v. Domenech*, No. 10–1464, 2011 WL 2144537, at *3 (E.D. Va. May 26, 2011) *aff'd*, 698 F.3d 168 (4th Cir. 2012). Under the APA, once an agency has taken "final agency action," a court may review that action and set it aside if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Many federal district and circuit courts have concluded the APA grants federal courts subject matter jurisdiction over cases seeking declaratory and injunctive relief for injuries caused by the Secretary's decisions made under the HEA. *See, e.g.*, *McGuire v. Duncan*, No. 14-1017, 2015 WL 5735273, at *5 (E.D. Mo. Sept. 29, 2015) (permitting student-borrower to bring action under APA reviewing Secretary's decision under HEA not to discharge her falsely certified loan, finding Department's false certification regulation in violation of HEA, and remanding to Secretary for

further proceedings); *Johnson v. U.S. Dep't of Educ.*, 580 F. Supp. 2d 154, 157 (D.D.C. 2008) (APA review of Secretary's decision not to discharge loan); *Gill*, 226 F. Supp. 2d at 370 (APA review of Secretary's interpretive rule under FFEL Program); *see also Jordan v. Sec'y of Educ. of the U.S.*, 194 F.3d 169, 171 (D.C. Cir. 1999) (permitting borrower's claim for declaratory and injunctive relief under APA and ruling Secretary's FFEL regulation was inconsistent with HEA); *Student Loan Mktg. Ass'n v. Riley*, 907 F. Supp. 464, 474 (D.D.C. 1995) *aff'd and remanded*, 104 F.3d 397 (D.C. Cir. 1997), *on reh'g* (Mar. 11, 1997), *certiorari denied* 522 U.S. 913 (Oct. 14 1997) ("Plaintiff's challenge to the Secretary's interpretation is brought under the APA, and courts have held that the anti-injunction clause of § 1082(a)(2) does not preclude relief for APA claims") (citations omitted); *Int'l Dealers Sch., Inc. v. Riley*, 840 F. Supp. 748, 749 (D. Nev. 1993) (rejecting argument that HEA Section 1082 barred injunctive relief and finding APA granted jurisdiction over claim seeking injunctive relief against Secretary). Other courts have held that "[a]lthough Section 1082 prohibits all injunctive relief that would interfere with the ordinary administrative functions of the Department of Education, it does not protect the Secretary from being enjoined when he exercises powers that are clearly outside of his statutory authority." *Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425, 428 (S.D.N.Y. 1996); *Canterbury Career Sch., Inc. v. Riley*, 833 F. Supp. 1097, 1103 (D.N.J. 1993); *but see Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013).

Ms. Adams seeks declaratory and injunctive relief under the APA, namely overturning two of the Secretary's decisions that harmed her. Specifically, she asks the Court to overturn the Secretary's decision in 2007 to rehabilitate loans that were group discharged in 1995 and to sell them in 2008 to entities intending to collect on those loans.[9] Compl. ¶ 12. She also asks to overturn

---

[9] The Secretary rehabilitated Ms. Adams's group discharged loan around 2007 and sold it with the

the Secretary's decision to refund her no interest on money she paid under her group discharged loan.[10] Compl. ¶¶ 64, 70. Because Ms. Adams alleges the Secretary's decision harmed her and she seeks injunctive relief, Ms. Adams brings her claims under the APA, not the HEA. Therefore, pursuant to the APA, the Court has subject matter jurisdiction over Ms. Adams's claims for injunctive relief.

In reply, the Secretary makes three arguments specifically for dismissal of Ms. Adams's APA claim for interest.[11] First, the Secretary argues APA review of the 2007 and 2008 decisions is time-barred. The APA does not have its own statute of limitations; but an action against a federal agency is an action against the United States, and therefore the six-year limitations period under 28 U.S.C. § 2401(a) applies to APA claims. *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999). An APA claim accrues, and the statute of limitations begins to run, when an individual is injured by final agency action. *See id.* ("Conduct becomes reviewable under the APA upon final agency action, in other words, when the agency has completed its decisionmaking process, and when the result of that process is one that will directly affect the parties.") (internal quotations and citations omitted). Ms. Adams is challenging the Secretary's 2007 decision to rehabilitate her group discharged FFEL loan and to sell it with other group discharged FFEL loans to agencies intending to collect on the loans, decisions which she could

---

other group discharged loans in 2008. However, based on Ms. Adams's claim for relief, the Court treats these as one decision, for present purposes.

[10] Although Ms. Adams has already received some relief—the Department refunded her the money she paid under her discharged loan—she claims she is entitled to additional injunctive relief, namely overturning the Secretary's decision to not pay her interest on the money refunded to her. Resp. at 4–6; *see also* Compl. ¶ 20.

[11] As for Ms. Adams's request to overturn the Secretary's decision to rehabilitate and sell group discharged loans, the Secretary argues this claim for injunctive relief is moot because even though perhaps thousands of people continue to pay on their rehabilitated but group discharged loans, Ms. Adams has already been refunded the money she paid on her own group discharged loan. The Court will analyze with the Secretary's mootness argument in Section III.B *infra*.

only challenge as a violation of law beginning in 2014, when her loan was discharged under the Secretary's 1995 group discharge finding. Had she challenged any earlier the Secretary's decision to sell the group discharged loans, her claim would have been dismissed for lack of finality. Her claim was not final until 2014 because the Secretary, in the 1995 letter, explained that despite the Department's finding FFEL loans certified by PTC Institute were eligible for group discharge, purported not to grant or deny a discharge until borrowers filed certification their ATB was improperly obtained; as such, the 1995 letter, per the agency's own decision,[12] did not constitute consummation of agency action; instead, recognizing Ms. Adams's FFEL loan as discharged in 2014 constituted final agency action. *See Salazar*, 2015 WL 252078, at *9 (dismissing claim because, among other things, Department's decision regarding group discharge is not final agency action for purposes of APA, finding instead that decision on individual discharge application is consummation of agency decisionmaking necessary to meet finality requirement). Therefore, prior to 2014 Ms. Adams's APA claim challenging the Secretary's decision to sell her loan had not accrued. Ms. Adams also challenges the Secretary's decision in 2014 not to pay interest on the money refunded to her. The instant suit was filed in 2015, which is within the APA's six-year statute of limitations for both claims.

Second, the Secretary argues the APA incorporates all limitations on the waiver of sovereign immunity prescribed by other statutes, and therefore, Section 1082(a)(2)'s anti-injunction provision requires the Court to dismiss Ms. Adams's APA claim for interest. In support of this position, the Secretary points out that nothing in the APA "'confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is

---

[12] A decision that, as discussed above in n.3, might be in violation of the Department's group discharge regulation. Again, the Court stays a ruling on this until further proceedings.

sought.'" Def.'s Reply 3, ECF No. 14 (citing 5 U.S.C. § 702(2)). This argument fails. The HEA does not expressly prevent suits like Ms. Adams's, which ask, in part, to overturn a decision by the Department allegedly arbitrary and capricious or in violation of law. Furthermore, as discussed above, several courts have recognized that individuals harmed by the Secretary's FFEL Program decisions may have the Secretary's decision overturned and seek injunctive relief pursuant to the APA. *See Jordan*, 194 F.3d at 171; *Student Loan Mktg. Ass'n*, 907 F. Supp. at 474 (citations omitted); *Int'l Dealers Sch., Inc. v. Riley*, 840 F. Supp. 748, 749 (D. Nev. 1993) (rejecting argument that HEA Section 1082 barred injunctive relief and finding APA granted jurisdiction over claim seeking injunctive relief against Secretary); *see also Johnson*, 580 F. Supp. 2d at 157; *Oklahoma Aerotronics, Inc. v. United States*, 661 F.2d 976, 977 (D.C. Cir. 1981) (rejecting argument that sovereign immunity prevents court from overturning unlawful agency action pursuant to APA); *but see McGuire*, 2015 WL 5735273, at *8 (ruling injunctive and declaratory relief in APA action inappropriate because Section 1082(a)(2) prohibited such); *Green v. U.S.*, 163 F.Supp.2d 593 (W.D.N.C. 2000).[13] Accordingly, Congress, pursuant to the APA, has waived sovereign immunity

---

[13] Moreover, the Fourth Circuit has held that equitable relief sought under the APA for government conduct in violation of law does not impinge the United States' sovereign immunity unless the sovereign would be stopped in its tracks and the injunction would cause substantial bothersome interference with the operation of the Government. *See Littell v. Morton*, 445 F.2d 1207, 1214 (4th Cir.1971); *see also Jones v. Duncan*, No. 11–158, 2012 WL 273738, at *5 (D. Md. Jan. 30, 2012) *aff'd*, 478 F. App'x 11 (4th Cir. 2012). The plaintiff in *Littell* sought APA review of a decision by the Secretary of the Interior and an order compelling the Secretary to act and pay him money allegedly owed under a contract. *Id.* at 1207, 1213. The district court dismissed the action on sovereign immunity grounds. The Fourth Circuit reversed, holding that even if sovereign immunity applied, the plaintiff could bring suit against an agency for injunctive relief unless the injunction would interfere with the government's performance of ordinary government duties or stop the government in its tracks. *Id.* at 1214. Here, even if the HEA's sovereign immunity waiver limitation found in Section 1082's anti-injunction provision is grafted into this APA case by APA Section 702(2), nothing raises the concern that awarding Ms. Adams injunctive relief by overturning the Secretary's decisions and remanding the action for further proceedings will stop the Department in its tracks or cause a substantial interference with its operations.

of the United States for actions like Ms. Adams's, which seek to overturn the Secretary's decision allegedly arbitrary and capricious or in violation of law.[14]

Lastly, the Secretary contends Ms. Adams's APA claim for interest must be dismissed because the United States has not waived sovereign immunity with respect to interest awards. The APA waives sovereign immunity only for actions seeking "relief other than money damages." *In re Howard*, No. 13-5261, 2014 WL 4628254, at *1 (D.C. Cir. July 14, 2014) (citing 5 U.S.C. § 702). Furthermore, "[a]part from constitutional requirements, in the absence of specific provision by contract or statute, or express consent by Congress, interest does not run on a claim against the United States." *Library of Cong. v. Shaw*, 478 U.S. 310, 317 (1986); *Woolf v. Bowles*, 57 F.3d 407, 409 (4th Cir. 1995). However, the Secretary reads *Shaw* too broadly by asking the Court to apply it to Ms. Adams's APA claim. In this case, Ms. Adams does not ask for interest on a claim against the United States, such as the Title VII claim in *Shaw*. Instead, her Complaint is reasonably read as asking to overturn the Secretary's decision that she was not entitled to interest on money she paid under her discharged FFEL loan since 2007. Thus, Ms. Adams's APA claim for interest falls outside the no-interest rule applied in *Shaw* because if the Secretary's decision to refund money without paying interest was arbitrary and capricious or in violation of law, the Court could overturn the Secretary's decision and remand the case back to the Secretary for further proceedings. *See Bowen v. Massachusetts*, 487 U.S. 879, 909 (1988) (ruling district court considering reversal of

---

[14] The Court does not render an opinion on whether Ms. Adams, if successful in this administrative review action, may ultimately obtain equitable relief despite Section 1082(a)(2)'s prohibition on equitable relief against the Secretary. The Court simply makes a distinction between jurisdiction over an APA claim and relief obtainable upon finding an APA claim meritorious. If Ms. Adams's APA claim is successful, the Court may be able to redress Ms. Adams's injuries by merely remanding the case to the Secretary for further actions and proceedings, instead of enjoining the Secretary. Accordingly, the issue of relief obtainable is preserved for a later time, if it must be addressed at all.

agency decision to not reimburse money did not purport to be based on finding that Government owed any amount of money, and noting the court's order would be for specific relief undoing the agency's decision and remanding back to the agency, rather than ordering money damages); *see also Student Loan Mktg. Ass'n*, 104 F.3d at 409 (permitting Sallie Mae's APA claim against Secretary where court's order, after remand, required Secretary to not collect offset fee for FFEL loans held by Sallie Mae). Because discovery has not started in this case, further proceedings may reveal the Secretary's decision that Ms. Adams was not owed interest on the money she paid on her discharged loan was arbitrary and capricious or in violation of law, including the HEA or Department regulations.[15]

In sum, the APA grants this Court subject matter jurisdiction over Ms. Adams's claims for declaratory and injunctive relief against the Secretary for the Department's decisions made under the HEA. Ms. Adams does not bring her claims under the HEA, and any limit on the waiver of

_____

[15] Furthermore, based on the Complaint, it is unclear whether Ms. Adams was refunded interest and collection fees she may have incurred and paid to entities other than the Department. For instance, HEA Section 1087(c)(1) provides, in relevant part:

> [I]f such student's eligibility to borrow under this part was falsely certified by the eligible institution or was falsely certified as a result of a crime of identity theft, . . . then the Secretary shall discharge the borrower's liability on the loan (*including interest* and collection fees) by repaying the amount owed on the loan and shall subsequently pursue any claim available to such borrower against the institution and its affiliates and principals

20 U.S.C.A. § 1087 (emphasis added). Additionally, although the Secretary has refunded Ms. Adams the money she paid on her discharged loan since 2007, Ms. Adams also went into default on that discharged loan and default carries additional fees. "One of the most serious consequences of default and delinquency for the borrower is that lenders may assess collection costs, fees, or penalties that the borrower must pay in addition to any principal and interest." Doug Rendleman & Scott Weingart, *Collection of Student Loans: A Critical Examination*, 20 Wash. & Lee J. Civil Rts. & Soc. Just. 215, 241 (2014). At this time, the Court is unable to ascertain based on the facts alleged whether Ms. Adams paid additional fees for her default in 2012, and if so, whether she received any of those fees in her 2014 reimbursement.

sovereign immunity in the HEA as to injunctive relief has no bearing on jurisdiction over this APA action. Ms. Adams's APA claims are timely and she may challenge the Secretary's decision that she was not entitled to interest on the money refunded to her in 2014.[16] Accordingly, the Court denies the Secretary's motion to dismiss for lack of subject matter jurisdiction on the ground of sovereign immunity.

### B. *Mootness*

The Secretary contends Ms. Adams's case is moot because Ms. Adams has had her FFEL loan discharged and received a refund of money she paid under the loan since 2007, which the Secretary claims is all the relief to which she is entitled.

Article III of the U.S. Constitution limits the jurisdiction of federal courts to deciding "cases" and "controversies." U.S. Const. art. III, § 2. Therefore, federal courts are prohibited under principles of justiciability from deciding cases that become moot before or during litigation. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citation and internal quotations omitted); *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (citation omitted). Thus, if an event makes it impossible for the court to grant any effectual relief to the plaintiff or the plaintiff receives all the relief he or she sought to obtain through the claim, these will moot the case. *Williams*, 716 F.3d 809 (citing *Church of Scientology*, 506 U.S. at 12). The mootness inquiry does not ask if the precise relief sought based on the challenged action is still available, but rather, whether the court can

---

[16] The Court notes that Ms. Adams has not pointed to specific statutes, regulations, or other rules that may require the Secretary to pay interest on money refunded to her. But because the briefing did not touch on the merits of Ms. Adams's APA claims, the Court leaves for another day the substance of Ms. Adams's APA claim for interest.

-18-

render any effective relief on the claim. *See Church of Scientology*, 506 U.S. at 12 (although court could not order IRS to unlearn knowledge it gained from tapes plaintiff originally sought to keep from IRS, plaintiff still had possessory and privacy interests that could be restored by court ordering IRS to return tapes); *ADAPT of Phila. v. Phila. Hous. Auth.*, 417 F.3d 390, 394 (3d Cir. 2005); *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986). Thus, an action is not moot if the litigant will suffer any present, future, or collateral consequences of the allegedly wrongful conduct, *see, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (once prisoner's sentence expires, prisoner can show continuing injury that is collateral consequence of conviction in order to maintain suit challenging conviction); *Minnesota v. Dickerson*, 508 U.S. 366, 371 n.2 (1993); *New England Health Care Employees Union, Dist. 1199, SEIU AFL-CIO v. Mount Sinai Hosp.*, 65 F.3d 1024, 1029 (2d Cir. 1995) (applying collateral consequences rationale to civil case), or if a court can provide partial relief where a full remedy may no longer be awardable, *see, e.g.*, *Pap's A.M.*, 529 U.S. at 287 (although owner had closed adult dancing establishment city sought to close, court could order other relief by ruling on the constitutionality of the ordinance); *Church of Scientology*, 506 U.S. at 12. Cases challenging government policies or decisions will not become moot even though the plaintiff has obtained relief from the policy or decision's injury so long as the policy or decision continues in force and adversely affects the plaintiff in some way. *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974). Additionally, an exception to the mootness doctrine allows courts to consider moot cases that challenge conduct capable of repetition, yet evading review. *Williams*, 716 F.3d 809. Lastly, in the context of class actions, the manner in which Ms. Adams seeks to proceed in this case, the Supreme Court has applied a more "flexible" approach to the mootness doctrine. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980). The burden of establishing that a claim is moot is heavy and it belongs to the party asserting mootness. *See*

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 189 (2000); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987); *Michigan v. Long*, 463 U.S. 1032, 1042 n.8 (1983) *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979).

Ms. Adams's case seeks APA review of two Department decisions; both of her claims based on these decisions are live and she has a legally cognizable interest in their outcome. First, she asks to overturn the Secretary's decision to rehabilitate and sell blanket discharged loans to entities for collection purposes. Second, she seeks review of the Department's decision to not pay interest on money refunded to her. Initially, it may appear Ms. Adams's first APA claim is mooted because at the time this suit was filed she had already received notice of her eligibility for discharge, gotten the Department to recognize her loan as discharged, and received a refund of the money she paid on her discharged loan since 2007. *Compare* Compl. ¶ 29, *with In re Howard*, 2014 WL 4628254, at *1 (ruling injunctive relief concerning borrower's loans would be moot, as the loans had been discharged). However, Ms. Adams allegedly continues to suffer the collateral consequences of the Secretary's decision to sell her loan, namely she claims the Secretary owes her interest on the money she was refunded. *Kemna*, 523 U.S. at 7; *Mount Sinai Hosp.*, 65 F.3d at 1029. In addition to allegedly being owned interest, the record is unclear whether the Secretary's 2007 decision, after which Ms. Adams defaulted on her loan, has had any continuing effect on Ms. Adams's credit score. Furthermore, even though the Court cannot accord Ms. Adams full relief, as some of it she has already obtained, the Court can still award her some relief, if she is successful on her APA claim for rehabilitating and selling, by remanding the action to the Secretary for proceedings on whether she is entitled to interest or other relief under law or Department rule. *Pap's A.M.*, 529 U.S. at 287; *Church of Scientology*, 506 U.S. at 12. Again, the mootness doctrine does not apply in cases where the plaintiff has obtained partial relief from the challenged conduct

but continues to seek additional relief. *See Gov't of Territory of Guam v. Sea-Land Serv., Inc.*, 958 F.2d 1150, 1153 (D.C. Cir. 1992) (although plaintiff received some of the discovery giving rise to the action, plaintiff continued to seek discovery of other materials). Therefore, although she has already had her loan discharged and some money refunded, Ms. Adams's APA claim arising from the Secretary's decision to rehabilitate and sell her discharged loan is not mooted because she still suffers collateral consequences of that decision and the Court may award her partial relief from it. As such, this is not a case where the Court cannot grant any effectual relief to the plaintiff, nor one where the plaintiff has received full relief she sought through the claim. *Williams*, 716 F.3d 809. As for Ms. Adams's second claim, this is live because she has not received the interest she claims the Department owes her. Accordingly, Ms. Adams's APA claims are both live, she has an interest in the outcome of her claims, and therefore her case is not moot as to either claim.

Even if Ms. Adams's claim seeking to overturn the Secretary's decision to rehabilitate and sell group discharged FFEL loans was moot, the exception to the mootness doctrine for cases challenging conduct capable of repetition yet evading review should be applied in this case. Generally, the capable of repetition yet evading review exception applies when (1) the challenged action is too short in duration to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011) (citation omitted). The exception's second prong is relaxed in cases challenging ongoing government policy or decisions because even where the policy or decision no longer affects the particular plaintiff who brought the challenge, it has effects that continue to affect others or will affect others in the future. *Ukrainian-Am. Bar Ass'n, Inc. v. Baker*, 893 F.2d 1374, 1377 (D.C. Cir. 1990); *see also United States v. Howard*, 463 F.3d 999, 1003 (9th Cir. 2006) *opinion withdrawn on denial of reh'g*, 480 F.3d 1180 (9th Cir. 2007). Pursuant

-21-

to the Department's 1995 Letter, any borrower in Ms. Adams's position—one who learns of the Department's prior group discharge for false certification—would need to submit an individual discharge application to the Department before he or she could bring suit challenging the Secretary's discharge decision.[17]  However, once the borrower submits a discharge application, the Secretary would recognize the discharge, based on the Department's prior group discharge finding, and reimburse the plaintiff before an action challenging the Secretary's decision to rehabilitate and sell the loan could conclude. Hence, under the mootness and finality doctrines, no person in Ms. Adams's position could bring a claim seeking to overturn the Secretary's decisions to rehabilitate and sell group discharged loans for collection purposes. As discussed above, the decision to sell and rehabilitate loans has caused injuries which discharge and reimbursement may not totally redress. Therefore, the exception for cases capable of repetition yet evading review should also prevent dismissing as moot Ms. Adams's APA claim seeking to overturn the Secretary's rehabilitation and sale decision.

To conclude, Ms. Adams's case is not moot. The Secretary fails to carry his heavy burden of demonstrating that Ms. Adams's claims are not live and that she has no personal stake in this matter. Even if Ms. Adams's case were moot, this is an appropriate case for applying the capable of cessation yet evading review exception because the Secretary's challenged action constitutes a government decision that continues in force and adversely effects Ms. Adams and others. Therefore, the Secretary's motion to dismiss on mootness grounds must be denied.

---

[17]  If such borrower had not applied for individual discharge, the APA's finality requirement would be unmet and the borrower's suit would be dismissed on that ground. *See Salazar*, 2015 WL 252078, at *9 (finding Department's decision to not issue group discharge is not final agency action for purposes of APA and instead decision on individual discharge application is consummation of agency decisionmaking necessary to meet finality requirement).

**IV.    Conclusion**

For the preceding reasons, the Court **DENIES** the Secretary's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on sovereign immunity and mootness.

The Court **DIRECTS** the Clerk to send a copy of this written Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        March 31, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE