IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KAREN ADAMS, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.                                                                 CIVIL ACTION NO. 3:15-3592

BETSY DEVOS,[1] in her capacity as Secretary
of the United States Department of Education,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiff Karen Adams' Motion for Class Certification. ECF No. 29. For the following reasons the Court **DENIES** the Motion.

## I. Background

A detailed discussion of the background of Adams' claims and the statutory structure on which they are based can be found in the Court's Memorandum Opinion and Order denying Defendant, Betsy DeVos's Motion to Dismiss. *Adams v. Duncan*, 179 F. Supp. 3d 632, 634–39 (S.D.W. Va. 2016). For the purposes of this Memorandum Opinion and Order only a brief summary is due. In 1986 Adams obtained a guaranteed student loan in the amount of $2,500 from Florida Federal Savings and Loan to attend the for-profit trade school PTC Institute in Florida. Both institutions are now defunct. Florida Federal met its demise in 1987 when an employee notified the Federal Bureau of Investigation that the bank was falsifying documents to comply

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Betsy DeVos was automatically substituted as the Defendant in this action upon her confirmation as Secretary of Education on February 7, 2017. Fed. R. Civ. P. 25(d).

with federal student loan regulations. *See United States v. Harmas*, 974 F.2d 1262, 1264–66 (11th Cir. 1992). A criminal investigation ensued and a number of Florida Federal's executives were convicted of, among other things, conspiracy to defraud the government and stealing government money. *Id.* PTC ceased to operate when in 1995 the Department of Education ("DoE") determined that PTC had falsely certified its students' eligibility for guaranteed student loans and issued group discharge to all borrowers who used their guaranteed student loans to attend the institution from January 1, 1986 through June 30, 1987. Borrowers could have their loans discharged by submitting certain forms to DoE.

Adams, awarded a Social Security Supplemental Income of around $700 in 1992, defaulted on her loan. Adams was apparently unaware of the discharge, but, all the same, she attempted to have her loan discharged in 2006. DoE denied the request because she wrote the wrong educational institution on the forms. In 2007, DoE convinced Adams to rehabilitate her loan, and in 2008 it sold her rehabilitated loan to SunTrust, a private financial institution. Neither DoE nor SunTrust realized that the loan was subject to discharge. In 2012, the loan guaranty agency, Educational Credit Management Corporation, informed Adams that her loan was eligible for discharge based on DoE's 1995 group discharge. Adams applied and was granted the discharge. She was refunded all payments made on the loan beginning in 2007, totaling $2,572.96. She did not receive interest.

Adams then brought suit claiming that DoE had violated the Administrative Procedures Act when it (1) rehabilitated her loan subject to discharge; (2) sold it to SunTrust; and (3) denied her claim for interest on the money paid on the discharged loan.

Adams now moves the Court to certify a class of plaintiffs whose eligibility for a guaranteed student loan disbursed in whole or in part on or after January 1, 1986 was falsely certified by PTC "and/or" whose loans were secured through Florida Federal and are allegedly

subject to restitution. Pl.'s Mot. for Class Certification 9, ECF No. 30. Adams believes the class composed of students whose eligibility was fraudulently certified numbers 10,000, while those whose loans were the basis for the criminal convictions of the Florida Federal executives numbers 17,000. It is not entirely clear to the Court whether Adams seeks to certify one or two classes. Nevertheless, DoE forcefully urges the Court to reject Adams' Motion entirely because Adams has provided no evidence supporting the number of potential class members.

## II. Legal Standard

Rule 23(a) of the Federal Rules of Civil Procedure establishes four class certification requirements: (1) a class so numerous that joinder of all members is impracticable; (2) questions of law or fact common to the class; (3) a representative party whose claims and defenses are typical of the class' claims and defenses; and (4) a representative party that will fairly and adequately protect the class' interests. Fed. R. Civ. P. 23(a); *Monroe v. City of Charlottesville*, 579 F.3d 380, 384 (4th Cir. 2009). "A plaintiff bears the burden of proving these requirements." *Id.* (citing *Thorn v. Jefferson Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006)). In addition to these four requirements, a plaintiff must also demonstrate that the proposed class action fits into one of three forms permitted by Rule 23(b). Fed R. Civ. P. 23(b) (1–3).

## III. Discussion

Adams characterizes her proposed class action as one seeking injunctive relief and therefore in the form described by Rule 23(b)(2): "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Notwithstanding, Adams has not been able to prove that her proposed class or classes meet the "numerosity" requirement of Rule 23(a)(1). There is no hard and fast rule that courts follow to

determine whether a plaintiff has met the numerosity requirement. There are, however, some generally applicable principles that courts have used to define the contours of this requirement. Consideration of class size is by far the most obvious sign of impracticality, but its not the only one. 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1762 (3d ed. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (citing "several factors" that inform the impracticability inquiry, including the nature of the action, the size of the individual claims, and the location of the class members).

While there is no threshold number of class members that would guarantee numerosity is met, very small classes consisting of two members up to twenty-six typically do not meet the requirement. *See, e.g.*, *Ackerman v. Bd. of Educ. of New York*, 372 F. Supp. 274 (S.D.N.Y. 1974) (finding a class of two insufficient to meet numerosity); *Sandoval v. M1 Auto Collison Ctrs.*, 309 F.R.D. 549 (N.D. Cal. 2015); *but see Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968) (finding class of twenty-five met the numerosity requirement). Likewise, very large classes are more likely to meet the numerosity requirement, as joinder of any number of class members in excess of a few hundred would be decidedly impractical. *See, e.g.*, *Borowski v. City of Burbank*, 101 F.R.D. 59, 62 (N.D. Ill. 1984) (finding two hundred potential claimants impractical to join); *Collins v. Olin Corp.*, 248 F.R.D. 95, 101 (D. Conn. 2008) (finding 300 claimants impractical to join).

A plaintiff is not required to prove with specificity the exact number of possible class members. *In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 197 (E.D.N.Y. 2008). Instead, "[p]laintiffs must offer 'some evidence of established, ascertainable numbers constituting the class.'" *Colo. Cross*, 765 F.3d at 1215 (quoting *Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)). A court is permitted to accept "common-sense" assumptions about the size of

the class in lieu of precise calculation of the class. *De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP*, 269 F.R.D. 445, 460 (E.D. Pa. 2010) (quoting *Alberton v. Commw. Land Title Ins. Co.*, 247 F.R.D. 469, 476 (E.D. Pa. 2008)). Some courts, however, have gone as far as to assume that "[w]here 'the only relief sought for the class is injunctive and declaratory in nature' even 'speculative and conclusory representations' as to the size of the class suffice as to the requirement of many." *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975) (quoting *Doe v. Flowers*, 364 F. Supp. 953, 954 (N.D.W. Va. 1973)) (internal ellipses omitted); *see also Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275–76 (10th Cir. 1977).

This last formulation of the numerosity requirement in cases seeking injunctive relief is, however, a minority position among the federal courts and is antagonistic to the Supreme Court's interpretation of the requirements of Rule 23(a). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("A party seeking class certification . . . must be prepared to prove that there are *in fact* sufficiently numerous parties . . . ." (emphasis in original)).

    a. *Proposed PTC Class*

The primary deficiency of Adams' request for class certification is her sole reliance on unsupported speculation about the size of the potential class. Adams has conducted months of discovery for the purpose of finding evidence to support her request for class certification, but none of the evidence presented to the Court would permit the Court to make a "common-sense" assumption finding the numerosity requirement met. The evidence Adams supplied relates to the DoE's 1995 decision to grant a blanket discharge to student debtors that had attended PTC between 1986 and 1987. It is undisputed that the DoE issued the blanket discharge and that Adams' loan was subject to the discharge. She also provides evidence of the number of students that PTC admitted from 1987 to 1989. In her estimation, it was approximately 10,000. This is one of the

numbers on which Adams bases her request for class certification, but this number, although possibly accurate, does not support a finding of numerosity. Adams has not attempted to quantify, or even approximate, the number of students out of the 10,000 enrolled whose loans were rehabilitated by the DoE. Even if she tried, there would be no evidence supporting her approximation.

Attending PTC on a guaranteed student loan is not sufficient to qualify the student as a potential class member. Adams' claims arise from DoE's allegedly improper rehabilitation and sale of a loan that was otherwise not enforceable due to the 1995 discharge. Thus, only PTC students whose loans were rehabilitated could be potential class members. Adams provides no support for the speculative conclusion that because a large number of students enrolled in PTC, a large number were also affected by DoE's decision to rehabilitate loans.[2]

Adams has not identified a single other potential class member, other than herself, whose discharged loan was subject to rehabilitation. Without even a sliver of evidence to base a decision, the Court cannot assume that Adams has met the numerosity requirement.

To put the Court's decision in context of the barest dictates of the numerosity requirement, the Court turns to the Fourth Circuit's decision in *Doe v. Charleston Area Medical Center, Inc.* cited above for the liberalized interpretation of the numerosity requirement in cases seeking injunctive relief.[3] 529 F.2d 638. In *Doe*, a plaintiff sought the certification of a class of women

---

[2] This formulation also assumes that all PTC enrollees paid for their tuition with a guaranteed student loan. It is by no measure an assumption borne out by the record in this case. Still, this assumption is on slightly better footing. Adams notes that PTC disbursed millions of dollars in guaranteed student loan funds from 1987 to 1990.

[3] The Court is not endorsing the *Doe* Court's formulation of the numerosity requirement. Indeed, it does not demand enough of plaintiffs seeking class certification and finds little support in the text of Rule 23(a) and even less in Supreme Court precedent. The Court cites *Doe* to make the point that Adams' request for class certification cannot meet even the most relaxed formulation.

who were denied abortions at the defendant's hospital. *Id.* at 640. The class action sought to enjoin the hospital from enforcing its policy of only providing abortions to save the mother's life. *Id.* The district court initially denied a request to certify the class because the plaintiff failed to demonstrate that there were a sufficient number of identifiable members of the class. *Id.* at 641. The Fourth Circuit reversed, certifying the class on the grounds that the district court ignored evidence produced by the plaintiff of an informal survey conducted by the plaintiff's witness that seventy women per month were forced to leave the state in order to receive an abortion. *Id.* at 645.

Thus, when the *Doe* Court determined that "speculative and conclusory representations" would suffice to demonstrate numerosity, it was referring to the speculative and conclusory nature of the informal survey used to support the plaintiff's claim of numerosity.[4] The Fourth Circuit was not endorsing a standard that permitted a finding of numerosity based on no evidence, speculative or otherwise. Adams' class certification falls into this second category and accordingly fails to demonstrate numerosity.

    b. *Proposed Florida Federal Class*

Adams' other source for potential class members has even less evidentiary support than the class composed of enrollees of PTC. While the Court is not sure whether Adams intended to request certification of one or two classes, the Court has treated her request as one for two separate classes: first, enrollees of PTC whose loans were subject to discharge pursuant to the 1995 blanket

---

[4] To illustrate this point further, in a case alleging that a mortgage lender's mailer violated the Fair Credit Reporting Act, the court found the numerosity requirement met when the plaintiff's evidence demonstrated that 1.2 million residents of Illinois received the mailer and that four percent of Illinois residents lived in the county which was used to geographically define the class, yielding a putative class of approximately 48,000. *Murray v. GMAC Mortg. Corp.*, F. Supp. 2d 636, 642 (N.D. Ill.), *vacated on other grounds*, 532 F. Supp. 2d 938, 945–46 (N.D. Ill. 2007). Adams has provided no way for the Court to estimate the number of PTC attendees whose guaranteed student loans were rehabilitated. Even a rough estimate, like the one in *Murray*, would likely suffice, but none has been forthcoming.

discharge, the subject of the last section, and second, students who secured a guaranteed student loan through Florida Federal. Adams claims that this latter group of debtors numbers 17,000. There is nothing in any document supplied to the Court that would support this number. Adams claims that this number is from a summary of falsified loans used by the Government in the prosecution of Florida Federal executives. That might be so but Adams has not provided the summary, and a review of the Eleventh Circuit case affirming one Florida Federal executive's conviction makes no mention of the number of loans summarized in a document used as evidence in his criminal trial. *See Harmas*, 974 F.2d 1262. Adams also cites to a newspaper article from the Orlando Sentinel that she claims makes reference to the 17,000 borrowers. Yet, for some unknown reason Adams did not provide the article to the Court.

Moreover, Adams alleges that all 17,000 loans were subject to restitution, therefore making them unenforceable and not subject to rehabilitation by DoE. Adams again provides no evidence that these loans were subject to an order of restitution. The Eleventh Circuit case, to which Adams cites, makes no mention of restitution. *See id.* Finally, this class suffers the same deficiency as the PTC class. Adams has not provided the Court with any evidence of the number of people, out of the alleged 17,000, who secured a guaranteed student loan from Florida Federal and whose loan was subsequently rehabilitated by DoE.

Adams suggests that although she lacks supporting evidence of any kind to satisfy the numerosity requirement, she should be excused from this burden because "lack of knowledge of the exact number of persons affected is not a bar to certification where the defendants alone have access to such data." Pl.'s Mot. for Class Certification 11 (quoting *German v. Fed. Home Lending Mortg. Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y. 1995)). In the *German* case cited by Adams, the plaintiff had not had the opportunity to conduct discovery related to the size and identity of the

potential class. *German*, 885 F. Supp. at 557. Adams' argument would be much more compelling had five months of discovery not just concluded. Were the data available to DoE, it should not now have sole access to it.

The *German* Court was also encouraged to find the numerosity requirement met by "'something within the record from which it can be inferred that a class does exist,' and 'a rough estimate could be made.'" *Id.* at 553 (quoting *Clarkson v. Coughlin*, 783 F. Supp. 789, 798 (S.D.N.Y. 1992)). The rough estimate yielded a potential class of a few hundred, certainly large enough to fall well within the bounds of what most courts consider sufficient to show numerosity. *Id.* What the *German* decision, along with the *Doe* and *Murray* decisions, demonstrates is that courts are disposed to find numerosity properly exhibited where there is some evidence on which to base a reasonable inference of class size no matter that a plaintiff cannot manifest a precise number. By substituting a reasonable approximation for a precise calculation these courts have not excused plaintiffs from the burden to present some evidence exhibiting a class large enough to make joinder impractical.

Other factors such as the nature of the action, the size of the individual claims, and the location of the class members, also inform the numerosity analysis. *Colo. Cross*, 765 F.3d at 1215. While courts have a tendency to focus on the number of class members nearly to the exclusion of these other factors, there is good reason for this. The class size animates these other factors, and these other factors when present are additive but not sufficient by themselves. Take for example, location of class members. The smaller the class, the more practical it becomes to prosecute the case through joinder even if some plaintiffs are from far flung locales. The reverse is also true. The larger the class the more impractical it is join all plaintiffs, especially when they are distributed throughout a large area. Hence, without some indication of the size of the class Adams proposes,

her arguments about the small size of the individual claims, and the privation of the class members cannot overcome the total absence of evidence of the size of the class.

Failing to have made a sufficient showing of numerosity, the Court declines to address Adams' arguments on the other three elements required to certify a class.

## IV. Conclusion

For the foregoing reasons Adams Motion for Class Certification is **DENEID**. ECF No. 29.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 23, 2017

_____
ROBERT C. CHAMBERS, CHIEF JUDGE